# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HUNTER BAILEY HOHN,**

          **Plaintiff,**

v.                                                           **Case No. 23-CV-061**

**BRANDON FISHER,**

          **Defendant.**

## DECISION AND ORDER

Plaintiff Hunter Bailey Hohn, who is representing himself and confined at Waupun Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Hohn was allowed to proceed on a claim under the Eighth Amendment against defendant Brandon Fisher for using excessive force against him. Fisher filed a motion for summary judgment. (ECF No. 21.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 7, 12.)

## PRELIMINARY MATTERS

In his reply brief in support of his motion for summary judgment Fisher argues that Hohn filed his response late and, because he did not ask the court's permission to file a late response, the court should accept Fisher's facts as undisputed. (ECF No. 31 at 1.) Hohn's response was due on November 10, 2023. (ECF No. 26.) He did not file it until November 15, 2023. (ECF Nos. 29-30.) The court notes that the Veterans Day holiday fell within this window. Additionally, Hohn's responses are dated November 9,

2023, and the court is aware that Waupun, due to staffing shortages and other circumstances, has recently had issues with e-filing prisoner submissions. The court notes that Fisher was able to file a reply.

The court will accept Hohn's response and consider it where appropriate in deciding the summary judgment motion.

## FACTS

During all times relevant Hohn was incarcerated at Waupun, and Fisher worked at Waupun as a Lieutenant. (ECF No. 23, ¶¶ 1-2.) On September 26, 2022, after Hohn finished a "PSU crisis contact" at approximately 12:30 p.m., he went to the Sergeants' Cage and "told [the Sergeant] to move me to cell I-28. I don't want my single cell no more." (ECF No. 29, at 1.) Sgt. Christopher Manthei, not a defendant, refused to move Hohn to a different cell and ordered him to return to his single cell. (ECF No. 23, ¶ 3.) It is undisputed that Hohn refused to return to his cell. (ECF No. 30, ¶ 3.)

Manthei called Fisher to the cell hall to speak with Hohn. (ECF No. 29 at 1.) Hohn explained to Fisher that Manthei would not allow him to move into a double cell. (ECF No. 30, ¶ 5.) Fisher responded that Hohn does not get to decide which cell he wants to reside in, at which point Hohn again requested to be moved to a double cell. (*Id.*, ¶¶ 6-7.) Fisher told Hohn to return to his cell or he would be placed in Temporary Lock Up (TLU). (*Id.*, ¶ 9.) It is undisputed that Hohn again refused to return to his cell. (*Id.*, ¶ 11.)

Fisher ordered Hohn to return to his cell once more, and Hohn once again refused, stating "move me to I-28. I don't want my single cell anymore." (ECF No. 30, ¶ 12.) Fisher then told Hohn he was placing him in TLU and ordered him to put his hands behind his back so he could be restrained. (*Id.*, ¶ 13.) Hohn noticed that he was surrounded by five staff members, including Fisher, causing Hohn to feel intimidated. (*Id.*, ¶ 14.) Hohn states that he "stepped back once" and told Fisher, "No, don't touch me" as Fisher was walking toward him and moving to grab him. (*Id.*) Hohn further states that, with multiple staff members approaching him, he began to fear for his safety. (*Id.*, ¶ 15.)

It is undisputed that Hohn then tried to dodge the staff members while Fisher was instructing him not to run and to allow him to put Hohn in restraints. (*Id.*, ¶¶ 16-17.) Hohn then suddenly turned and began to run up a nearby staircase. (*Id.*, ¶ 19.) When Fisher ordered Hohn not to move, Hohn did not comply. (*Id.*, ¶ 20.) Fisher then tased Hohn once, hitting him in the back. (*Id.*, ¶ 21.) Hohn immediately stopped running, and states that he fell and hit his head on the metal stairs. (*Id.*)

It is undisputed that Hohn then slid down the stairs, where Fisher helped him to stand. (ECF No. 30, ¶ 22.) As he was getting up, Hohn stated, "Yeah ok I'm done, fuck that hurt." (*Id.*, ¶ 23.) Hohn was then secured, and Fisher took him to TLU. (*Id.*, ¶ 25.) On the way to TLU, Fisher asked Hohn if he wanted to see someone from the Health Services Unit (HSU). (*Id.*, ¶ 26.) Non-defendant Nurse Whitney Pitzlin examined Hohn and determined that, other than marks from the taser prongs, Hohn was medically fine. (*Id.*, ¶ 27.)

While Hohn acknowledges he was not complying with orders, he asserts that he was not being aggressive. (ECF No. 30, ¶ 36.) He also states that Fisher had less severe measures to gain Hohn's compliance, such as OC spray. (*Id.*, ¶ 34.) Fisher states that he decided not to use OC spray because Hohn was facing away from Fisher when he started to run and OC spray would simply have hit his back. (ECF No. 23, ¶ 34.) Also, other prisoners and staff members were in the vicinity and using OC spray could have affected those people. (*Id.*) Fisher states that, in his judgment, using the taser was the least risky option to gain Hohn's compliance. (*Id.*, ¶ 37.)

Fisher submitted a video of the incident which generally corroborates the facts. Although the video does not have sound, it shows Hohn initially calmly talking to three officers. He then turns around and starts to run up the metal staircase behind him. It is not until he starts to run that Fisher pulls out a taser. Because the video is partially obscured, it is not possible to determine whether Hohn hit his head. However, he clearly slides down the staircase after being tased. Hohn is then able to get up and walk without assistance. (ECF No. 25-1 at 0:00-1:15.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the

4

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Hohn claims that Fisher violated his Eighth Amendment rights when he tased him. "Correctional officers violate the Eighth Amendment when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 Fed. Appx. 378, 382 (7th Cir. 2020). "Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the

5

need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

No reasonable factfinder could conclude that Fisher used his taser in violation of the Eighth Amendment. It is undisputed that Hohn was disobeying orders. He refused to return to his cell and then refused to be restrained so he could be escorted to TLU. It is also undisputed that Hohn attempted to run away from the officers. Fisher applied the taser in good faith to gain Hohn's compliance. As the video shows, Fisher only deployed the taser after Hohn attempted to run away from him.

Hohn argues that, even though he ran away, he was not behaving aggressively and the use of a taser was not warranted. However, by disobeying orders and running away, he was behaving in a way that compromised the security and safety of other prisoners and staff, justifying the use of a taser.

Hohn asserts that he hit his head because Fisher used the taser while he was on the stairs. The fact that Hohn hit his head does not render Fisher's use of the taser malicious and sadistic. It is merely an unfortunate consequence of Hohn's decision to flee. Also, it is undisputed that Hohn did not suffer a significant injury when he hit his head. He did not report the head injury either to Fisher or to Nurse Pitzlin. And when Nurse Pitzlin examined him, she did not find any injury other than marks left by the taser prongs.

As for Hohn's arguement that Fisher could have used OC spray, other people were in the area and could have been impacted by OC spray. Absent evidence of clear

6

error, courts should defer to prison officials on what qualifies as a security risk and how that risk is best reduced. *Conyers v. Abitz,* 416 F.3d 580, 585 (7th Cir. 2005); *Bell v. Wolifish,* 441 U.S. 520, 547 (1979). There is no evidence that Fisher's decision was unreasonable or inappropriate. Summary judgment is granted in his favor.

## CONCLUSION

For the foregoing reasons, the Fisher's motion for summary judgment is granted. Fisher also argued that he was entitled to qualified immunity, but because the court is granting summary judgment in his favor on the merits it does not need to address the qualified immunity arguments. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's amended motion for summary judgment (ECF No. 21) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 14th day of February, 2024.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge